UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW FLORES,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 08-1475 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　Andrew Flores filed this action on October 27, 2008. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on November 13 and November 25, 2008. (Dkt. Nos. 8, 9.) On May 28, 2009, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

　　　Having reviewed the entire file, the Court affirms the Commissioner's decision.

///

///

///

///

**1.**

## PROCEDURAL BACKGROUND

On October 22, 2004, Flores filed an application for Supplemental Security Income benefits. AR 30. The application was denied initially and upon reconsideration. *Id.* An Administrative Law Judge ("ALJ") conducted a hearing on April 6, 2007, at which Flores, a medical expert ("ME"), a vocational expert ("VE") and Flores' brother, Rudolph Flores, testified. AR 81-100. On April 26, 2007, the ALJ issued an unfavorable decision. AR 10-20. Flores requested review of the decision on August 27, 2007. AR 7. The Appeals Council remanded for further proceedings on October 26, 2007. AR 41-45. On remand, a supplemental hearing was held on February 5, 2008 before a different ALJ, at which Flores and a VE testified. AR 101-17. On March 14, 2008, the ALJ issued an unfavorable decision. AR 27-37. On August 22, 2008, the Appeals Council denied Flores' request for review. AR 21-24. This lawsuit followed.

**2.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the

evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

### 3.
### DISCUSSION

#### a. Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

#### b. The ALJ's Findings

The ALJ found that Flores has the following severe impairments: "back pain and depression."  AR 32.  He has the residual functional capacity ("RFC") to perform medium work "except that he cannot work on dangerous machinery and is limited to entry level work involving routine, repetitive tasks and things rather than people."  AR 33.  He cannot perform his past relevant work.  AR 35. However, "there are jobs that exist in significant numbers in the national economy that the claimant can perform" including, for example, hand packager, industrial cleaner or kitchen helper.  AR 36.

#### C. Flores' Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

At Step One, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'  The claimant, however, 'need not show that her impairment could reasonably be expected to

3

cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' 'Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.'" *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir 1991) (*en banc*). The ALJ found that Flores' medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. AR 34.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ did not find malingering.

"[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility

4

evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13,[1] quotation marks omitted); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ may also consider inconsistencies or discrepancies in claimant's statements; inconsistencies between claimant's statements and activities; exaggerated complaints; and unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959; *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

***Back Pain***

The ALJ discounted Flores' statements regarding his back pain for three reasons: (1) inconsistency with the objective medical record; (2) no evidence of any recent treatment for his back; and (3) no indication that Flores takes any pain medication. AR 34.

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (claimant's pain allegations may be discounted based on MRI and X-rays showing only mild degenerative disc disease). The ALJ noted that a September 2003 MRI of Flores' lumbar spine showed a 4mm disc bulge but was otherwise normal. AR 34, 220. The ALJ's finding is supported by substantial evidence, including an examining physician's opinion. AR 292 (examining physician interpreting MRI as

---

[1] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

5

"a normal MRI for stated age").[2]  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (ALJ may discount claimant's testimony based on objective medical evidence), *cert. denied*, 128 S. Ct. 1068, 169 L. Ed. 2d 808 (2008).

An unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment are valid considerations in determining credibility.  *See Orn*, 495 F.3d at 636; *Thomas*, 278 F.3d at 958-59.  The ALJ's finding that there is no recent treatment for back pain is supported by substantial evidence.  Flores does not identify any recent treatment records for his back, and the Court has located none in the administrative record.  In April 2004, a record of a visit to an ophthalmology clinic noted mild strain in the paraspinal area but good range of motion.  AR 211.  As the ALJ noted, there is an MRI of the back in September 2003.  AR 220.

An ALJ may discount a claimant's pain testimony based on a conservative course of treatment.  *See Parra*, 481 F.3d at 750-51.  Flores testified that the only pain medications he ever took were Tylenol (including Tylenol III that Flores obtained without prescription from his brother).  AR 108, 110-11.  The ALJ's finding is supported by substantial evidence.

### *Depression-Related Complaints*

Flores contends that the ALJ did not properly credit his subjective complaint of decreased concentration and hallucinations.  JS 4, 8.

The ALJ agreed with "the analysis portion" of the prior ALJ's decision, which discussed Flores' subjective complaints and the medical evidence and concluded that Flores "was capable of performing non-public, simple, repetitive tasks."  AR 34.

Analyzing the subsequently submitted medical evidence, the ALJ found nothing that would prevent Flores "from performing entry level work involving

---

[2]  Flores was 42 in 2003.  AR 220.

6

routine, repetitive tasks and things rather than people." *Id.* The ALJ relied on the treating psychiatrist's work capacity evaluation (mental) form and Flores' work history. AR 35. The ALJ found that Flores' complaints to his treating physician related primarily to life stressors such as financial difficulties and a strained relationship with his daughters. AR 34. Flores responded well to medication and his mood improved when he increased his interaction with family. *Id.*

The ALJ gave "significant weight" to the Work Capacity Evaluation (Mental) dated December 3, 2007, submitted by Flores' treating psychiatrist, Dr. Dittemore. AR 35, 381-82. Dr. Dittemore's assessment took into account Flores' subjective complaints about concentration and hallucinations. *E.g.,* AR 344, 367, 371.

Dr. Dittemore's treating opinion is consistent with the ALJ's RFC assessment that Flores is limited to entry level work involving "routine, repetitive tasks and things rather than people." AR 33. As the ALJ noted, Dr. Dittemore assessed no limitation in Flores' ability to remember work-like procedures; understand and remember short and simple instructions; carry out short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; get along with co-workers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others. AR 381-82. Dr. Dittemore assessed Flores with "moderate" limitations in the ability to maintain attention and concentration for extended periods; maintain a schedule, regular attendance and punctuality within customary tolerances; and respond to changes in the work setting. *Id.* The ALJ found that a "moderate" limitation in these areas would not significantly affect Flores' ability to perform work within his

7

RFC. AR 35; 20 C.F.R. § 416.290a(c)(4) (the last point on each scale – none, mild, moderate, marked and extreme – "represents a degree of limitation that is incompatible with the ability to do any gainful activity"). In examining the treating notes, the ALJ found no reason to conclude Flores "is not mentally capable of performing entry level work involving routine, repetitive tasks and things rather than people." AR 35.

At the hearing, the ALJ questioned Flores about why he is unable to work. AR 112. Flores responded by referring to his separation from his family, causing him to hear kids' voices three or four times a month, for five to ten minutes. AR 112-13. He also sees images of a person or animal "through the side." AR 113. In response to a question as to the effect of those symptoms, Flores responded, "I couldn't be in a hospital and see those things. You have to be alert. You have to be quick." AR 114.

The ALJ agreed that Flores is unable to perform his past relevant work as a nurse's assistant. AR 35. The ALJ's RFC assessment takes into account Flores' subjective complaints about concentration and hallucinations as incorporated in Dr. Dittemore's evaluation.[3] The ALJ also incorporated a limitation that reflected Flores' testimony that he "can't be around people." AR 112. In summary, Flores has not identified subjective complaints that were not accounted for in the RFC assessment. The ALJ's credibility finding is supported by substantial evidence in the record. *Thomas*, 278 F.3d at 959; *Morgan*, 169 F.3d at 600.

### D. Treating Physician Opinions in 2003

Flores contends that the ALJ did not properly consider certain opinions

---

[3] The ALJ did not credit Dr. Dittemore's assessment of a "marked" limitation in Flores' ability to accept instructions and respond appropriately to criticism from supervisors. AR 35. The ALJ properly relied upon Flores' own statements that he "got along in an excellent manner with people at work" and Flores' work history, which did not indicate any problems with supervisors. AR 35, 282.

8

expressed in January and February 2003 by Dr. Havert and Dr. Dittemore. JS 8-9, 12.

In February 2003, Dr. Havert diagnosed major depressive disorder, recurrent, severe with psychotic features, and assessed a Global Assessment of Functioning ("GAF") score of 52. AR 206. There is no supporting record of examination or treatment. Although Flores attributes his "mental status examination" on January 8, 2003, to Dr. Havert (JS at 8), the document actually reflects that it was done by Benjamin Barnes, M.A. AR 207. The mental status findings indicate Flores was oriented x4, alert, coherent, had fair insight and judgment, had an appropriate general appearance, and had a depressed and irritable mood and affect. *Id.*

On January 14, 2003, Dr. Dittemore diagnosed major depressive disorder with psychotic features; alcohol dependence, early remission; and polysubstance dependence. AR 228. On January 31, 2003, Dr. Dittemore made the same diagnosis and assessed a GAF of 50.[4] AR 239.

The opinion of a treating or examining physician is given more weight than the opinion of non-treating physicians. *Orn*, 495 F.3d at 631; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotations omitted). "When there is conflicting medical evidence, the Secretary must determine

---

[4] However, in a letter dated June 4, 2004, Dr. Dittemore describes Flores' diagnosis as "Major Depressive Disorder with Psychotic Features *which are primarily in remission* . . . ." AR 252 (emphasis added).

credibility and resolve the conflict." *Thomas,* 278 F.3d at 956-57 (citation and quotation marks omitted).

The ALJ agreed with "the analysis portion" of the prior ALJ's decision, which discussed these two diagnoses. AR 17, 34. "[T]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir 1993). A claimant must show that he is precluded from engaging in substantial gainful activity by reason of his impairments. *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). Contrary to Flores' argument (JS at 9), neither treating physician opinion in 2003 (prior to the alleged onset date) addressed the issue of limitations on Flores' ability to work. Nor did the ALJ err in not discussing the GAF scores. A GAF is not determinative of mental disability for social security purposes. *See* 65 Fed. Reg. 50746, 50764-50765 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."). A failure to reference a GAF score, standing alone, does not undermine the ALJ's findings. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting argument that ALJ erred in failing to mention GAF score).[5]

The ALJ gave greater weight to Dr. Dittemore's Work Capacity Evaluation (Mental) dated December 3, 2007. AR 35, 381-82. An ALJ may reasonably give a treating physician's later opinion greater weight because it is based on a more complete evaluation and treatment. *See Lester*, 81 F.3d at 833. An ALJ may reasonably give less weight to the opinions in 2003, which were dated over one and a half years prior to the alleged onset date of October 22, 2004. *See Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1988). The ALJ did not err.

### E.     Dr. Dittemore's Evaluation in 2005

Flores argues that the ALJ erred in failing to state explicitly that he was

---

[5] *See also McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008).

10

rejecting Dr. Dittemore's Work Capacity Evaluation (Mental) dated May 27, 2005. JS at 13-16, 18. In that evaluation, Dr. Dittemore opined that Flores had slight limitation in the ability to carry out short and simple instructions. AR 325. Flores had moderate limitation in the ability to ask simple questions or request assistance, and the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. AR 325-26. Dr. Dittemore assessed marked or extreme limitations in all other categories. *Id.*

The ALJ stated that he gave "significant weight" to Dr. Dittemore's subsequent evaluation in 2007. AR 35. As discussed above, the 2007 evaluation is consistent with the ALJ's RFC assessment, and an ALJ may reasonably give a treating physician's later opinion greater weight. *See Lester*, 81 F.3d at 833.

The ALJ states that he gave "careful consideration to the medical evidence that was before [ALJ] Gaye at the time he issued his decision (i.e., Exhibits 1-F through 16-F)." AR 34. Dr. Dittemore's 2005 evaluation is Exhibit 14-F, which is in the group of exhibits the ALJ expressly stated he considered. AR 325-26. The ALJ "incorporate[d] Judge Gaye's thorough and well-reasoned analysis," and cited pages 4-6 of the prior decision. AR 34.

The prior ALJ discounted Dr. Dittemore's 2005 evaluation for three reasons: (1) Dr. Dittemore did not have Dr. Smith's report dated December 7, 2004; (2) Dr. Dittemore's functional limitations in the 2005 evaluation were inconsistent with her letter dated June 2004 and treating records showing improvement in Flores' condition after the alleged onset date of October 22, 2004; and (3) the opinions of the medical expert and state agency physicians. AR 18. The Appeals Council did not specifically assign error to the prior ALJ's consideration of Dr. Dittemore's 2005 evaluation. AR 43-45.

There is no indication that Dr. Smith's report dated December 7, 2004 was available to Dr. Dittemore. As noted by the prior ALJ, Dr. Smith found Flores not

credible in his mental status exam or interview. AR 286. Flores appeared to have arrived with "rehearsed" talking points that he used in response to questions that were not on those subjects. AR 278, 286. When Dr. Smith attempted to follow up on Flores' talking points, Flores could not provide any details or description. AR 278-86. Dr. Smith "did not believe [Flores] is impaired in his ability to work from a psychiatric disorder." AR 286. An ALJ may reject a treating physician's opinion based on an examining physician's opinion with independent clinical findings. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). In addition, "reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Id.* Therefore, the ALJ did not err in relying on the medical expert and state agency physicians who relied on the examining physician's report. AR 91, 309-10. In summary, the state agency examiners found that Flores was depressed, isolative, but "quite capable of adequate functioning, and his various alleged psychoses did not significantly interfere with this functioning even if they existed." AR 18, 310, 305-24. Specifically, the state agency examiner "concluded that [Flores] could sustain nonpublic simple repetitive tasks."[6] AR 18, 307. The ALJ's rejection of the 2005 evaluation is supported by substantial evidence. *See Orn*, 495 F.3d at 632

### F. Side Effects Of Flores' Medication

Flores points to two entries in Dr. Dittemore's series of "Medication Visit" records, on July 14, 2005 (AR 330), and September 5, 2006 (AR 354), that Flores felt "dry mouth" and "sedation" using Seroquel. The treating notes reflect that Seroquel was discontinued on September 5, 2006. AR 351, 354. At the remand hearing, Flores agreed he was then taking Risperdal, Wellbutrin, Celexa

---

[6] The state agency examiner found marked limitations only in Flores' "ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public." AR 18, 305-06.

and Depakote, but did not identify Seroquel as a current medication. AR 107.

Flores does not cite to any evidence that these side effects interfere with his ability to work. At the hearing, Flores did not identify side effects as a reason he could not work. "There were passing mentions of the side effects of [plaintiff's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [his] ability to work." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (side effects such as "dozing off" and "dry mouth" not severe enough); *see also Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) ("[Plaintiff] produced no clinical evidence showing that narcotics use impaired his ability to work"). The ALJ did not err.

### G. ALJ's Hypothetical Question To The Vocational Expert

The ALJ may rely on testimony a VE gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock*, 240 F.3d at 1165.

Flores argues that the ALJ erred in not including the limitations contained in Dr. Dittemore's 2005 evaluation or the side effects from medication in his hypothetical to the vocational expert. (JS 22-23.)

Because the ALJ properly discounted Dr. Dittemore's 2005 evaluation, the ALJ did not err. *See Rollins*, 261 F.3d at 857. Given there was no substantial evidence that side effects limited or prevented Flores from working, the ALJ properly excluded that limitation. *See Osenbrock*, 240 F.3d at 1164 (excluding side effects from hypothetical); *Greger*, 464 F.3d at 973 (same).

///
///
///

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: September 17, 2009

_____
ALICIA G. ROSENBERG
United States Magistrate Judge